UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JUSTIN F.,

                Plaintiff,

v.                                                                                              CASE # 1:21-cv-00966

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER<br>  Counsel for Plaintiff<br>6000 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ.<br>MARY ELLEN GILL, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | KRYSTLE S. MCMULLAN, ESQ.<br>VERNON NORWOOD, ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

I.     **RELEVANT BACKGROUND**

    A.     **Factual Background**

Plaintiff was born on July 26, 1991, and has at least a high school education. (Tr. 254, 259). Generally, plaintiff's alleged disability consists of adjustment disorder, right shoulder tendonitis, depression, anxiety, memory loss, alcohol and cannabis abuse disorders, shin splints bilaterally, knee pain, stress fracture, and left ankle strain. (Tr. 253). His alleged onset date of disability is August 1, 2019 and date last insured is December 31, 2023. (Tr. 259).

    B.     **Procedural History**

Plaintiff protectively filed an application for Disability Insurance Benefits under Title II of the Social Security Act on August 6, 2019. (Tr. 224). Plaintiff's application was denied, after which he timely requested a hearing before an Administrative Law Judge (ALJ). On March 18, 2021, plaintiff appeared telephonically for a hearing before ALJ Stephen Cordovani. (Tr. 41-81). On April 30, 2021, ALJ Cordovani issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 12-35). On July 9, 2021, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-3). Thereafter, plaintiff timely sought judicial review in this Court.

    C.     **The ALJ's Decision**

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since August 1, 2019, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD); low back disorder; post-traumatic stress disorder (PTSD); and

      adjustment disorder (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the individual shall have no extreme heat, cold or humidity; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, and other respiratory irritants. He can understand, remember and carry out simple instructions and tasks; is able to work in a low stress work environment reflected by no supervisory duties, no independent decisionmaking, no strict production quotas as with assembly line work, and minimal changes in work routine and processes. He shall have no unfamiliar travel; occasional interaction with supervisors and co-workers, no or only incidental interaction with the general public; and no team, tandem or codependent work with coworkers.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on July 26, 1991 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2019, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 12-35).

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff argues the RFC is unsupported by substantial evidence because the ALJ ignored an opinion from Dr. Reynolds and also failed to incorporate limitations from the opinion of Dr. Ransom. (Dkt. No. 6 [Pl.'s Mem. of Law).

### B. Defendant's Arguments

Defendant asserts the RFC is supported by substantial evidence and the ALJ reasonably considered all opinion evidence in accordance with the regulations (Dkt. No. 9 [Def.'s Mem. of Law]).

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity'

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.   VA Disability Questionnaire

Plaintiff first argues the ALJ committed reversible error by failing to evaluate statements by VA psychologist Reynolds that were made as part of a Veterans Affairs (VA) compensation and pension (C&P) exam on December 6, 2019. (Dkt. No. 6 at 10-14, *referring to* Tr. 1156-1161). Defendant counters that the statements were not a medical opinion subject to consideration under the regulations as medical opinion evidence. (Dkt. No. 9 at 8). For the reasons discussed below, the Court finds the ALJ appropriately considered the Reynolds report and remand is not warranted.

The new regulations do not require the ALJ to assign specific weight or deference to any medical opinion, including a treating physician's opinion. *See* 20 C.F.R. § 416.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Further, a "medical opinion" is defined, in relevant part, as:

> a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: ...
> (ii) Your ability to perform the mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting.

20 C.F.R. § 404.1513(a)(2)(ii). However, "some opinions of medical providers ... are not 'medical opinions' as that term of art is used in the Social Security context." *Charles F. v. Comm'r of Soc. Sec.*, No. 19-CV-1664 (LJV), 2021 WL 963585, at *2 (W.D.N.Y. Mar. 15, 2021). For instance, "[d]isability and other benefits decisions made by other governmental agencies—'such as the Department of Veterans Affairs' ("VA")—are made 'for their own programs using their own rules [and therefore are] not binding on [the

6

Commissioner].' *Id.* (quoting 20 C.F.R. § 404.1504). Indeed, the regulations provide that other agencies' disability determinations are inherently neither valuable nor persuasive to the issue of whether a claimant is disabled or blind under the Act, so the ALJ will not provide any analysis about how he considered such evidence in his determination or decision. 20 C.F.R. §§ 404.1520b(c). "Nonetheless, in such a circumstance, the ALJ still must 'consider all of the supporting evidence underlying' other agencies' disability determinations." *Charles F.*, 2021 WL 963585, at *2 (quoting 20 C.F.R. § 404.1504).

It is undisputed that the Reynolds' report was generated for Veterans Administration to use as part of that agency's disability assessment based on the VA disability standards. The Mental Disorders form clearly indicates the disability benefits questionnaire (DBQ) was being completed in conjunction with a VA C&P Examination request. (Tr. 1156-57). Notably, Dr. Reynolds was not a treating source and had last examined plaintiff for a C&P almost a year earlier in January 2019. (Tr. 1159).

While few cases in this jurisdiction have specifically addressed the issue of disability findings of other governmental agencies under the new regulations, the majority of district courts agree C&P reports are "other medical evidence" under 20 C.F.R. § 404.1513(a)(3). Therefore, the ALJ need only consider the evidence underlying the VA's disability determination in C&P reports. *See, e.g., Melissa S. v. Comm'r of Soc. Sec.*, 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) (finding VA PTSD questionnaire was not a medical opinion under SSA regulations); *Foster v. Kijakazi*, 2022 WL 412729, at *6 (N.D. Iowa Jan. 25, 2022) (same); *Stout v. Kijakazi,* 2021 WL 4459732, at *4 (E.D. Mo. Sept. 29, 2021) (same); *Scott L. v. Saul*, 2021 WL 1574451, at *3 (D. Me. Apr. 21, 2021) (same), R.&R. adopted, 2021 WL 3234592 (D. Me. July 29, 2021); *Shawn Ann J. v. Comm'r of Soc. Sec.*, 2021 WL 733804, at *5 (N.D.N.Y. Feb. 25, 2021) (same). As such, the regulations do not require an ALJ to articulate his evaluation of "other medical evidence" in the same way or to the same degree as a "medical opinion." *See* 20 C.F.R. §§ 404.1520c.

While the ALJ did not explicitly reference by name the Reynolds' opined limitations in the narrative conclusion of the report, he did identify and discuss the VA C&P report. (Tr. 24). In sum, the ALJ did not ignore the C&P questionnaire. Further, in addition to the report, ALJ Cordovani discussed the extensive medical records and therapy examination findings from the VA providers which Dr. Reynolds reviewed and relied upon for his report. (See Tr. 1159).

Cases cited by plaintiff in support of his argument are easily distinguishable. For instance, in *Lewis*, the prior regulations pertaining to the evaluation of medical opinion evidence applied. *Lewis v. Colvin*, No. 1:14-CV-00794 (MAT), 2017 WL 2703656, at *2 (W.D.N.Y. June 23, 2017). In *Joseph M.*, while the revised regulations applied to the claim, the ALJ did not mention the C&P report or reference any opinions by the VA, and the Court concluded it was "unclear whether the ALJ actually considered that Reynold's report was not a medical opinion or whether the ALJ simply overlooked the report in the voluminous record." *Joseph M. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1052 CJS, 2021 WL 841403, at *14 (W.D.N.Y. Mar. 5, 2021). Here, ALJ Cordovani properly considered the evidence underlying the C&P examination and report, while also noting there were multiple opinions on issues reserved to the Commissioner and that decisions by other governmental or non-governmental entities, including VA disability ratings, were neither inherently valuable nor persuasive under the current rules for evaluating medical evidence. (Tr. 32). 20 CFR §§ 404.1504, 404.1520b(c)(1) and 404.1520b(c)(3).

In this case, the ALJ was clear and intentional with respect to the decisions by other governmental agencies, such as the VA and Reynolds reports. The ALJ did not ignore evidence from the VA but properly acknowledged that the reports generated by other agencies, under their rules, and not in functional terms, was not valuable to the RFC analysis. (Tr. 32).

Plaintiff cites a case regarding equivocal terms, which supports defendant's argument that the report is other medical evidence and not a medical opinion. (Dkt. No. 10 at 3). As found in *Lisa A. S. v. Kijakazi*, the current regulations have removed 'judgments about the nature and severity of your impairments' as well as 'diagnosis' and 'prognosis' from the definition of 'medical opinions' and placed them in the definition of 'other medical evidence.' " *Lisa A. S. v. Kijakazi*, No. 21-cv-00078, 2022 WL 4494189, at *2 (N.D.N.Y. Sept. 28, 2022) (quoting 20 C.F.R. §§ 404.1513(a)(3))). The statements by Dr. Reynolds in the final narrative part of the form were vague, using the term "major impairment" and "could" repeatedly to describe abilities and limitations. (Tr. 1160-61).

The conclusory summary of the Reynolds statement is as follows:

"7. Remarks (including any testing results), if any:

Based upon the records examined, the veteran's self-report, relevant literature, and the training and experience of this examiner, it is the opinion of this examiner that this veteran would be unable to secure and maintain substantially gainful employment in his normal occupational environment, regardless of his physical or sedentary aspects of a given job, primarily due to persistent symptoms of an Adjustment Disorder, per DMS-5 diagnostic guideless, such as irritability and difficulty concentrating as well as an avoidance of conversations, interpersonal interactions, crowds, and being detached and having a restricted range of effect. These functional limitations would impact the veteran's ability to engage in professional and effective interpersonal interactions and he could be experienced by supervisors, co-workers, or customers as hostile at worst or aloof or disinterested at best; it would also undermine the quality of his productivity. These functional limitations could also result in avoidant behavior that could ultimately significantly affect attendance to scheduled work shifts.

/es/ WILLIAM A. REYNOLDS
PSYCHOLOGIST
Signed: 12/06/2019 12:08"

(Ex. No. 8F, p. 60/Tr. 1161).

Interestingly, the Reynolds report said nothing addressing "what plaintiff can still do" despite his impairments. However, as it pertains to social and occupational functioning, the report

indicated in part that plaintiff would have difficulty establishing and maintaining effective *work* relationships, difficulty adapting to stressful circumstances, and difficulty adapting to *work* or a *work-like* setting … (Tr. 1160)(emphasis added). The statement concludes with the equivocal prediction that these functional limitations could also result in avoidant behavior that could ultimately, significantly affect attendance to scheduled work shifts. *(Refer to entirety of report).*

To accept plaintiff's theory that the Reynolds statements were the equivalent of a functional opinion essentially nullifies the relevant revised regulations. The statement consists of three sentences, the first of which expresses the opinion that plaintiff would be unable to secure gainful employment due to a delineated list of symptoms. The next sentence comments on the functional limitations impact on plaintiff's ability to engage in various interactions where he could be experienced by others as hostile, aloof, or disinterested. The third sentence suggests the limitations could result in avoidant behavior.

When read in its entirety, the narrative conclusion of the Reynolds report is precisely why 20 CFR 404.1504 and 20 CFR 404.1520b(c) were enacted. For that reason, the Commissioner's presentation to this Court was neither absurd, preposterous, or an outrageous construction of the regulations. (*Referring* Dkt. No. 10 [Pl's reply brief]).

### B.  Dr. Ransom's Opinion

Next, plaintiff argues the ALJ erred by not incorporating all limitations opined by Dr. Ransom into the RFC since he found the opinion persuasive. (Dkt. No. 16 at 14). On October 10, 2019, Dr. Ransom performed a consulting psychiatric evaluation at the request of the state agency. (Tr. 378). Dr. Ransom opined that plaintiff had "moderate limitation to understand, remember or apply simple and complex directions and instructions using reasoning and judgment to make work-related decisions, interact adequately with supervisors, and perform a task at a consistent pace,

sustain an ordinary routine and regular attendance at work, regulate emotions, control behavior, and maintain well being, and awareness of hazards and precautions. (Tr. 381). The ALJ found the opinion generally persuasive. (Tr. 22-23, 31).

In compliance with the regulations, ALJ Cordovani found Dr. Ransom's opinion well-explained and supported by her own examination findings (Tr. 31, 379–81). 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). The ALJ also found Dr. Ransom's opinion generally consistent with the overall record, including reports from Drs. Dekeon and Lawrence. (Tr. 31, 1131, 1322, 1324, 1386, 1402–03, 1429). 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). While plaintiff concedes that the ALJ found the opinion persuasive and consistent with the overall record, he contends the ALJ did not account for a moderate limitation in regulating emotion, controlling behavior and maintaining well-being. (Dkt. No. 6 at 16).

Indeed, while the ALJ found the opinion generally persuasive, in that same paragraph he did not explain why the moderate limitations in adapting and managing oneself were not included in the RFC, but that is not grounds for remand. *See Mangual v. Comm'r of Soc. Sec.*, No. 20 CIV. 7526 (GWG), 2022 WL 1251506, at *11 (S.D.N.Y. Apr. 28, 2022) (affirmed; "[W]hile the ALJ did not separately discuss [Plaintiff]'s capacity to regulate emotions, control behavior, and maintain well-being in his discussion of Dr. Schaich and Dr. Broska's opinions, the ALJ elsewhere in his decision provided reasons for his finding that [Plaintiff] was only mildly limited in this

11

area.") (emphasis added). As a general principle, an ALJ does not have to state on the record every reason justifying a decision, and "[an] ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Marie R. v. Comm'r of Soc. Sec.*, No. 6:21-CV-775 (CFH), 2022 WL 2180989, at *12 (N.D.N.Y. June 14, 2022). In this case, the ALJ's rationale is gleaned from the record and review of the entire decision. *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011)("Where the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient.").

A "moderate" limitation means not serious or work preclusive but means that a claimant's functioning is "fair." *See* 20 C.F.R., Part 404, Subpart P, Appendix Z, Mental Disorders, 12.00(f) ("The Five-Point Rating Scale"). ALJ Cordovani incorporated the requirement for simple, low stress work into the mental RFC Finding but plaintiff asserts the moderate limitations opined would equate to being off-task 10% of the workday. (Dkt. No. 6 at 17). However, moderate mental limitations with regulating emotions, controlling behavior, and maintaining well-being, are consistent with an RFC such as the ALJ determined here. (Tr. 20*). See, e.g., Susan B. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 107, 117 n. 3 (W.D.N.Y. 2021) (opinion of moderate limitations with regulating emotions, controlling behavior and maintaining well-being was consistent with RFC for unskilled work involving limited interaction with others); *Jacqueline L. v. Comm'r*, 515 F. Supp. 2d 2, 8-11 (W.D.N.Y. 2021) (opinion of moderate limitations with regulating emotions, controlling behavior, and maintaining well-being was consistent with RFC for low-stress work involving limited contact with others); *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 483 (W.D.N.Y. 2021) (opinion of moderate limitations with regulating emotions, controlling behavior,

and maintaining well-being was consistent with RFC for simple, routine and repetitive tasks, making simple work-related decisions, and occasionally interacting with others).

Furthermore, the ALJ explained the opinion of Dr. Ransom was generally consistent with State agency consultant Dr. Dekeon, who opined mild limitations in plaintiff's ability to adapt or manage oneself based on his determination that plaintiff was not significantly limited in his ability to respond appropriately to changes in the work setting, or in his ability to be aware of normal hazards and take appropriate precautions. (Tr. 30, *citing* Tr. 86–87, 92, 1094). The ALJ also found the record indicated plaintiff was attentive and actively engaged, despite feeling overwhelmed at times. (Tr. 32, *citing* Tr. 1324). The ALJ's discussion of the subjective complaint analysis and the "Paragraph B" criteria, which the ALJ incorporated by reference in his RFC discussion, also noted mild findings. (Tr. 19–20, 26). The ALJ referenced plaintiff's mental status findings which indicated he had good hygiene and grooming (Tr. 26, *citing* Tr. 1322), his ability to do work around the house, perform chores, clean, shop, dress, bathe, and cook for himself (Tr. 20, 381, 1322), and plaintiff's responsibility for a ninety-gallon aquarium that he takes care of by changing the water and feeding the fish (Tr. 20, *citing* Tr. 65–66 [hearing testimony]). The ALJ was permitted to rely on the state agency consultant Dr. Dekeon. *Frye ex rel. A.O. v. Astrue*, 485 F.Appx 484, 487 (2d Cir. Jun. 13, 2012) (an ALJ may rely on a State agency consultants' report if supported by the medical evidence in the record).

Plaintiff does not raise an issue with the ALJ's consideration of Dr. Dekeon's opinion but rather disagrees with the ALJ's resolution of the conflict in the opinion evidence. When substantial evidence of record supports the ALJ's determination of the facts, the Court must defer to the ALJ's decision. *See Vilardi v. Astrue*, 447 Fed. App'x 271, 272 (2d Cir. Jan. 10, 2012) (summary order).

**ACCORDINGLY, it is**

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 6) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is

**GRANTED**.

Dated: October 19, 2023  *J. Gregory Wehrman*
Rochester, New York  HON. J. Gregory Wehrman
United States Magistrate Judge